## BRUSH ELECTRIC CO. *v.* BRUSH-SWAN ELECTRIC LIGHT CO. OF NEW ENGLAND.

*(Circuit Court, S. D. New York.  January 16, 1892.)*

PRINCIPAL AND AGENT—CANCELLATION OF CONTRACT.

The Brush Electric Company constituted a certain corporation its agent for a period of years for the sale of its machines in New England and other eastern states. Disagreements arose between them, and at length the Brush Company refused to furnish more machines under the contract. On suit by the New England Company the contract was upheld, but, pending further proceedings, the Brush Company filed a cross-bill to cancel the contract, alleging that since the former decision the New England Company had come under the control of hostile influences, namely, those of the Westinghouse Company, which was engaged in manufacturing machines competing with those of the Brush Company. This allegation was based mainly on the ground that an attorney having a merely formal relation with the New England Company, and who was the legal adviser of, and personally interested in, several corporations in which Mr. Westinghouse was interested, had written a letter containing the unauthorized statement that the New England Company was "controlled by the Westinghouse interests." It appeared at the trial that Westinghouse and Jackson, stockholders in the Westinghouse Company, had bought a controlling interest in a certain illuminating company. But no acts of hostility were shown. It further appeared that the illuminating company also had a contract of agency with the Brush Company, and that since it came under the alleged hostile influences it had sold more Brush machines than ever before. *Held*, that no cause was shown for canceling the contract.

In Equity.  Final hearing on cross-bill, answer, and proofs.

The Brush Electric Company, owning certain patents, and engaged in manufacturing electrical machines thereunder, had a contract with the Brush-Swan Electric Company of New England, whereby the latter was constituted its exclusive agent for the sale of said machines in New England and other eastern states.  The contract provided, among other things, that the New England Company was to receive as compensation a certain discount on the selling price, and that the Brush Company would not itself sell any machines in the specified territory.  Various disagreements arose between the two companies, mainly growing out of the alleged inability of the New England Company to meet its payments to the Brush Company, as provided by the contract.  At length the latter refused to furnish more machines, and began selling them in that territory itself.  On suit by the New England Company, the contract was upheld, and the complainant declared to be entitled to an injunction and accounting.  41 Fed. Rep. 163.  A rehearing was applied for and denied.  43 Fed. Rep. 225.  Afterwards leave was given to file the cross-bill, upon which the present hearing is had.  Id. 701.

*John E. Parsons, Albert Stickney,* and *Gilbert H. Crawford,* for cross-complainant, cited the following authorities:

In the case of an individual, the mere fact of divided duty constitutes a breach of the employment agreement. *Pearce* v. *Foster,* 17 Q. B. Div. 536; *Dieringer* v. *Meyer,* 42 Wis. 311; *Davoue* v. *Fanning,* 2 Johns. Ch. 252; *Michoud* v. *Girod,* 4 How. 554.  It would be a defense in a suit for past compensation. *Murray* v. *Beard,* 102 N. Y. at page 508, 7 N. E. Rep. 553.  And it might entitle the principal to damages up to the value to him of the agreement. *Panama, etc., Co.* v. *India Rubber, etc., Co.,* L. R. 10 Ch. App. 515.

*Joseph H. Choate* and *William G. Wilson,* for cross-defendant.

Coxe, District Judge. The relief demanded by the cross-bill is that the contracts decided to be valid in the original suit shall be canceled and the original bill dismissed. The theory of the cross-bill is that since the main controversy was tried the cross-defendant (the Brush-Swan Company) has come under influences which are hostile to the cross-complainant (the Brush Company) and that it would be inequitable to enforce the relations of principal and agent between companies so diametrically opposed in interest. The main facts and circumstances of which hostility is predicated may be briefly stated as follows: George Westinghouse, Jr., and Caleb H. Jackson are stockholders in the Westinghouse Electric Company of Pittsburgh, a competitor, in electrical business, of the Brush Company. In September, 1889, Westinghouse and Jackson purchased a controlling interest in the stock of the Brush Illuminating Company, which has, substantially, the same contract with the Brush Company as the Brush-Swan Company, except that the operations of the Illuminating Company are confined solely to the city of New York. The Brush Illuminating Company controls a majority of the stock of the Brush-Swan Company. In other words, the Brush-Swan Company can be controlled by the Illuminating Company, the Illuminating Company can be controlled by Westinghouse and Jackson and they can be controlled by the Westinghouse Company, *ergo*, the Brush-Swan Company may be controlled by "the Westinghouse interests." On the 14th of February, 1890, Paul D. Cravath, a lawyer, addressed a letter to Henry Hine, a general district agent of the Westinghouse Electric Company, in which he refers to the Brush-Swan Company as being "controlled by the Westinghouse interests." The firm of which Mr. Cravath was a member was substituted as attorneys for the Brush-Swan Company in this litigation, but their connection with it has been only a formal one. Mr. Cravath is interested as counsel, and otherwise, in several corporations in which Mr. Westinghouse is interested, and has, of late, acted as adviser for Mr. Westinghouse in many instances. On the other hand, it appears that the Brush Company has made no attempt to cancel its contract with the Illuminating Company, which though directly controlled by Westinghouse and Jackson is, apparently, doing a satisfactory and remunerative business. Both Westinghouse and Jackson disclaim any hostility to the Brush Company and insist that their intention is and always has been to assist the Brush-Swan Company pecuniarily in carrying on its business if the old relations are resumed.

It seems to be admitted on all sides, where the rights of the parties are fixed by contracts like those in controversy, that an agent who, in all things, honestly and faithfully performs his duty towards his principal, cannot be legally discharged. It is not pretended that the Brush-Swan Company, the Illuminating Company, or, indeed, "the Westinghouse interests," have done any act to indicate a hostile intent towards the Brush Company. The case, stated as strongly as the proofs will warrant, shows only that the Westinghouse Company and the Brush Company are rivals in business, and that some individuals connected with the former company have obtained the control of the Illuminating Company,

which in turn, owns a controlling interest in the Brush-Swan Company. But all this falls, far short of establishing hostility on the part of the Brush-Swan Company towards the Brush Company. Why the directors of the Brush-Swan Company, assuming them to be rational men, should have any inclination to engineer that company into a position of hostility is not explained and ·is not easy to conjecture. Its only available property is the contract with the Brush Company. Why should it destroy its only source of income? If the contract relations are resumed, and the Brush-Swan Company faithfully and diligently performs its obligations under the contracts, it will, in all probability, build up a successful business and put money in the purses of its stockholders. If, on the other hand, it sees fit to destroy itself in a vain attempt to aid the Westinghouse Company, the result will be the immediate cancellation of its contracts, leaving the Brush Company free to enter the field as an active competitor. That the Brush-Swan Company will pursue a course dictated alike by honesty, self-interest and common sense, may, fairly, be presumed. But it need not be left to presumption. Its future course can be demonstrated beyond dispute. As before stated, the apprehension of enmity is not founded upon any overt act of the Brush-Swan Company. Since its orders were refused it has been in a state of legal coma. It has done nothing.

It is argued, however, that it may become unfriendly because of the alleged hostile interests which surround it. This proposition can be tested in only one way. To the question, "How will the Brush-Swan Company conduct itself in the future?" the answer is: "Try it; give it an opportunity to show how it will act." Let the Brush Company resume its contract relations with the Brush-Swan Company and it will very soon appear whether the latter company will in good faith carry out its contracts. The Brush Company is entirely secure in trying this experiment, for the moment a hostile act on the part of the Brush-Swan Company is proved, that moment the Brush Company is relieved. The difficulty with the position of the Brush Company is that it depends for support upon an attenuated inference which is barely discernible in its inception, grows less and less substantial as it progresses, and fades away entirely long before it reaches the cross-defendant. The only facts proved tend to show that the control which the Brush Company dreads would be anything but detrimental to its interests.

The Illuminating Company is the agent of the Brush Company for the city of New York. The Illuminating Company is much nearer the hostile influence, because a majority of its stock is owned, personally, by Westinghouse and Jackson. And yet no fault is found with the Illuminating Company, and no attempt has been made to cancel its contract. The relations between the parties have been friendly, their contract has been faithfully kept, and the result has been financially beneficial to both. The proof shows that since the Illuminating Company came under the sinister influence of that somewhat esoteric and intangible apparition known as "the Westinghouse interests," it has sold many more Brush lamps than ever before.

If the Brush Company can succeed upon the facts of the cross-bill, it can, *a fortiori*, cancel its contract with the Illuminating Company. No one will seriously argue that this is possible, and yet every reason urged against the Brush-Swan Company applies with greater force to the Illuminating Company.

The Cravath letter does not fill the fatal hiatus in the cross-complainant's proof. Giving it the most inimical construction contended for and it is still insufficient. The court would hardly be justified in destroying valuable contract rights upon a hasty and careless declaration made in the circumstances disclosed by Mr. Cravath. It was, he says, a thoughtless and unauthorized statement. It added no new fact to the controversy, it was a mere expression of opinion. If the ill-advised expression relating to "the Westinghouse interests" had been used by the writer to characterize some act which, otherwise, might not indicate a hostile intention, a different construction would, perhaps, be necessary. But, as has been seen, the Brush-Swan Company had done nothing to indicate that it was controlled by "the Westinghouse interests" and "the Westinghouse interests" had done nothing to indicate that they had controlled or would control the Brush-Swan Company. Certainly there was nothing to indicate a control hostile to the Brush Company. So far as facts are concerned Mr. Cravath's letter leaves the case as it was before.

The authorities cited on the brief submitted on behalf of the Brush Company all refer to cases of individuals where the agent was guilty of some conduct which was, or might be, injurious to the interests of the principal. No case has been cited, and, from the known diligence and ability of counsel, it may safely be inferred that none can be cited, where a corporation, faithfully performing its duties, has been discharged as agent, because individuals, supposed to be hostile to the principal, own a majority interest in a corporation which in turn owns a majority interest in the agent corporation. It is not easy to compare an individual with a corporation in such circumstances, but the court is here asked to sanction a proposition, which, if applied to an individual, would enable a principal, in violation of his contract, to discharge a faithful agent because a rival in business, by reason of relationship or pecuniary obligations, was supposed to exercise an influence over the agent which might be used to the injury of the principal. This will never do. Such a proposition cannot be sustained, whether the agent be an individual or a corporation. The cross-bill cannot be maintained without some proof of hostility on the part of the cross-defendant. No such proof has been given.

The original decree should not be disturbed.